**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

TOM SEQUEIRA,

          Plaintiff,

  vs.

ALAMEDA COUNTY INDIVIDUALLY, et al.,

          Defendants.

_____/

No. C 06-01413  MEJ

AMENDED
ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGEMENT

## I.    INTRODUCTION

      Plaintiff Tom Sequeira, a former employee of Alameda County, filed a complaint against the County of Alameda under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq. ("Title VII"), the California Fair Employment and Housing Act, California Government Code § 12904(a) ("FEHA"), and 42 U.S.C. § 1983.  Plaintiff also alleges causes of action for Negligence, Negligent Infliction of Emotional Distress, and Breach of Contract and Covenant of Good Faith and Fair Dealing.  On January 12, 2007, Defendant filed the present Motion for Summary Judgment. For the reasons set forth below, the Court GRANTS Defendant's motion.

## II.    BACKGROUND

**A.    Factual Background**

      The evidence submitted by the parties indicates the following:

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff Tom Sequeira ("Plaintiff") was first employed by Defendant The County of Alameda ("Defendant") as a Clerk II in 1990.  This is a civil service position for which Plaintiff took a civil service examination.  Plaintiff started working in the Clerk Recorder's office in 1997.  In approximately 1999, his title changed from a "Clerk" to a "Clerk Recorder."  Plaintiff was promoted to Clerk Recorder II sometime before 2001.  In mid-2001, Plaintiff began working in the Recording Department under Roz Johnson.

Plaintiff alleges that he was discriminated against because of the color of his skin.  Plaintiff believes he was the target of progressive disciplinary procedures, which were unmeritorious, and that a three-year campaign to terminate him began September 11, 2001 and ended in his forced resignation.  (Compl. ¶ 16, 96).  On September 11, 2001, events occurred that Plaintiff interpreted as discriminatory.  First, when he walked into the building he heard the deputy sheriff say, "He just came in.  He just walked in."  Plaintiff was the only person that had just walked in, and he interpreted this statement as being discriminatory because there was no reason for anyone to be asking why he was there.  When Plaintiff arrived in his department that morning, a fellow employee looked at him and said "Osama."  When he spoke to the lead clerk that morning, her eyes were staring, her nostrils were flared, and she didn't blink.  At approximately 5 minutes to 9 a.m., Plaintiff's supervisor told him he could go home.  He looked up at the ceiling and said, "Thank god."  In response, his supervisor yelled out loudly, "People are dying here and you are going 'yahoo.'"  Plaintiff did not make any complaints to any supervisors about the Deputy, the lead clerk, or his supervisor.

When Plaintiff returned to work after September 11, 2001, he called Ms. Johnson and told her that he needed to speak to her in her office with the door open.  When he walked into her office, Ms. Johnson lunged at the door and shut it, yelling, "in my office I'll do what I want."  Ms. Johnson then yelled something to the effect of "I don't care where you come from or who you are."  Plaintiff interpreted this statement as being discriminatory, though he never complained to anyone about the incident.  A day or two after September 11, 2001, Plaintiff was walking behind two coworkers when

United States District Court
For the Northern District of California

one of them began to increase her pace and stated, "You'll never know what they do next." Plaintiff interpreted this statement as being discriminatory since it appeared that these co-workers were in fear of him. Sometime during the week of September 11, 2001, Plaintiff alleges that one of his coworkers referred to him as "Taliban." Plaintiff never reported any of the above incidents to any supervisor. Plaintiff could not recall any other comments made to him by Alameda County employees that he interpreted as being discriminatory.

On September 21, 2001, Plaintiff shared concerns he had regarding how he had been treated after September 11, 2001, with personnel officer Kevin Hing. Mr. Hing documented this conversation in an email and a memo to Plaintiff, dated September 24, 2001. Thereafter, Mr. Hing met with members of the Auditor-Controllers Agency ("Agency") and informed them of the need to be tolerant in light of the events of September 11, 2001. Mr. Hing also encouraged Plaintiff to make a formal complaint, which would be duly investigated. Plaintiff responded to Mr. Hing by sending an email thanking him for his concern and stating he would report his concerns to Kate Quick, the personnel and affirmative action officer for the Agency, as soon as he got a chance. Mr. Hing responded by email, confirming that the Agency was committed to ensuring that it provides a work environment free of discrimination and encouraging Plaintiff to report his complaint to Ms. Quick so that the matter could be thoroughly investigated. On November 5, 2001, Mr. Hing followed up with Plaintiff as to whether he'd submitted his concerns and if there was anything more he could do to address Plaintiff's concerns. Plaintiff responded that there were no concerns to address. Due to the insufficient detail to substantiate Plaintiff's claims, Mr. Hing informed Plaintff via email on November 8, 2001 that he considered the matter closed. He asked Plaintiff to advise him immediately if he experienced or witnessed any act of discrimination at any time. Plaintiff responded "Thank-you" to the email. Plaintiff never advised Mr. Hing that he had witnessed or experienced any other acts of discrimination after this, but stated that he closed the matter for fear of losing his job.

On November 6, 2001, Plaintiff received an email from his supervisor, Roz Johnson, telling

3

clerks in the department to use only the front and not the back door.  Plaintiff was offended by the email and sent a response including the statement "I am not used to this "Getto" (sic) type behavior and expect to conduct business in a professional manner with mutual respect."  This letter prompted a meeting with the involved parties in the Human Resources Office, where Ms. Johnson told Plaintiff she was offended by his use of the work ghetto in his email because she took it as a racial epithet.  Plaintiff stated that he did not mean it that way and only meant to imply that Ms. Johnson's behavior was not professional.  Plaintiff received a letter of reprimand from Kate Quick and was formally reprimanded.  Plaintiff was advised that a further instance would result in additional discipline, up to and including termination.  Plaintiff sent an apology email to Ms. Johnson.  On November 15, 2001, Plaintiff requested of Mr. Hing that he be removed from cross-training in Ms. Johnson's department.  Mr. Hing counseled Plaintiff that his cross-training was required in order for Plaintiff to receive a promotion, and Plaintiff agree to complete the cross-training.  Plaintiff was ultimately promoted to Clerk-Recorder Specialist III on August 5, 2002.

On November 19, 2001, Plaintiff sent a letter to some of his coworkers, which laid out a plan to oust Ms. Johnson from her position as supervisor of the department.  The letter was addressed to "My Dear Filipino Americans."  One of the recipients of the letter brought it to the attention of Mr. Hing and as a result, Mr. Hing met with Plaintiff and presented him with a notice of recommendation of disciplinary action, recommending a five-day suspension without pay.  Mr. Hing also counseled the Plaintiff on appropriate ways to effectively address problems he was having with his supervisor.  Plaintiff requested a *Skelly* hearing to contest the recommendation and the hearing was held on December 20, 2001.  At the hearing, the email to Ms. Johnson and the letter to "My Dear Filipino Americans" were addressed.  The *Skelly* hearing officer issued her opinion on January 7, 2002, and recommended that Plaintiff be suspended for three days for willful disobedience, insubordination, and discourteous treatment of the public or fellow employees.  On January 8, 2002, Plaintiff was notified that he was to be suspended for three days, beginning January 15, 2002.  Plaintiff did not appeal the action to the civil service commission.  After Plaintiff's hearing and

4

**United States District Court**
For the Northern District of California

resulting suspension, he did not have any further issues with Ms. Johnson and was ultimately promoted out of her department to Clerk-Recorder Specialist III in August of 2002.

Plaintiff's alleged further misconduct on the job resulted in a second *Skelly* hearing in August of 2003. The allegations relating to this hearing arose out of an investigation into the misuse and abuse of the computer email system as a result of inappropriate emails sent and received by employees. Approximately 19 employees received some form of discipline as a result of this investigation. The inappropriate use of email investigation revealed multiple emails, many of which were perceived as offensive, that were sent and received by Plaintiff. As a result of the investigation and Plaintiff's record of past disciplinary action, he was sent a notice of intent to discipline with a recommendation for termination on July 11, 2003. Plaintiff was placed on administrative leave for six months pending the completion of the investigation and a second *Skelly* hearing. Plaintiff contends that some of the emails were planted in his inbox, and that management planted some of the emails to get rid of him, though he could not specify who did so, or why. A *Skelly* hearing concerning this matter was held on August 8, 2003 and the result was a recommendation for a ten-day suspension. The hearing officer did not recommend termination, and Plaintiff was ultimately suspended for ten working days from October 27, 2003 through November 10, 2003.

On October 26, 2004, a female coworker of Plaintiff's complained to Mr. Hing about Plaintiff's inappropriate behavior. This employee, Sonja Basra, alleged that Plaintiff pulled her hair on three occasions and made comments to her that she believed were sexual in nature when showing her a photograph. Ms. Basra also informed Mr. Hing that other clerks had told her that Plaintiff made inappropriate comments about customers and provided Mr. Hing the names of those coworkers. Plaintiff denies that he pulled Ms. Basra's hair. He stated that he touched her hair while he was asking her about how she got it highlighted since his daughter had asked him to highlight her hair. Plaintiff disputes that the comments made to Ms. Basra when showing her a photograph of himself as a younger man were of a sexual nature. Mr. Hing interviewed several of Plaintiff's coworkers who informed him that Plaintiff frequently and repeatedly made inappropriate comments

about female customers, using inappropriate terms to describe their body parts.  Plaintiff denied making any inappropriate comments about female customers.

As a result of the investigation prompted by Ms. Basra's complaints, a notice of intent to discipline Plaintiff by terminating him was sent to him on November 12, 2004.  Plaintiff believes that somehow, through the manner of Mr. Hing's investigation, all of the individuals involved were coaxed into saying things that never happened.  Plaintiff requested a *Skelly* hearing and was placed on administrative leave between November 12, 2004 and December 16, 2004.  A third *Skelly* hearing was held on December 16, 2004 and the agency recommended Plaintiff's termination.  At the hearing, through his union representative, Plaintiff was offered the option of resigning in lieu of termination.  Plaintiff accepted this offer and eventually submitted a letter to Mr. Hing stating that he wished to resign, effective February 4, 2005.  Plaintiff could not recall any statements made by Mr. Hing in the meetings leading up to the third *Skelly* hearing which he perceived as discriminatory, and there were no statements at the hearing which Plaintiff found discriminatory. Nothing was said during the hearing which made Plaintiff think he was being terminated because of his race.  Plaintiff never raised the issue that he was being discriminated against because of the color of his skin or his race to Mr. Hing after September 25, 2001 except for when he raised the issue as a defense at his *Skelly* hearings.  Plaintiff's last day of employment by with Alameda County was February 4, 2005.

**B.      Procedural Background**

On February 24, 2006, Plaintiff filed a complaint against Defendant in the United States District Court, Civil Action No. C06-01413.  Defendant timely filed an Answer to the Complaint. The case was originally assigned to/ was originally filed with MEJ for ADR.

On June 23, 2006, in accordance with the provisions of 28 U.S.C. 636(c), all parties voluntarily consented to have a United States magistrate judge conduct any and all further proceedings in the case, including trial, and order the entry of a final judgment.

United States District Court
For the Northern District of California

1   On November 20, 2006, Defendant filed a Disclosure of Expert Witnesses.

2   On January 12, 2007, Defendant filed a Motion for Summary Judgment, a Separate

3 Statement of Undisputed Material Facts, and the Declaration of Andrea S. Carlisle in support

4 thereof.

5   On February 9, 2007, Plaintiff filed an Affidavit in Opposition to Defendant's motion, as

6 well as Objections to Evidence in Opposition to Defendant's motion.

7   On February 14, 2007,  Plaintiff filed a Reply to Plaintiff's Documents filed in Opposition.

8   On February 15, 2007, the Court held a hearing on the matter.

9

10                              III.    DISCUSSION

11  **A.    Venue and Jurisdiction**

12      Venue is proper in the Northern District of California because the events or omissions giving

13 rise to Plaintiff's claims occurred in Alameda County, which is located within the Northern District.

14 28 U.S.C. §§ 84, 1391(b).  This Court has federal question jurisdiction over this action brought

15 under Title VII and 42 U.S.C. § 1983.  28 U.S.C. § 1331.  Courts look to federal interpretations of

16 discrimination law when interpreting the provisions of FEHA, and therefore the federal and state

17 discrimination claims should be analyzed together.  *Nidds v. Schindler Elevator Corp.,* 113 F.3d

18 912, 916 (9th Cir. 1996), cert. denied, 522 U.S. 950 (1997); 28 U.S.C. § 1367.

19  **B.    Legal Standard**

20      Summary judgment is proper when the pleadings, discovery and affidavits "show that there

21 is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

22 matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" only if there is a sufficient evidentiary

23 basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is

24 "material" only if it could affect the outcome of the suit under governing law.  *Anderson v. Liberty

25 Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

26      The moving party bears the initial responsibility of informing the court of the basis for its

27

28                                      7

**United States District Court**
For the Northern District of California

1   motion and identifying those portions of the pleadings, discovery and affidavits that it believes

2   demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317,

3   323 (1986). On an issue for which the opposing party will have the burden of proof at trial, the

4   moving party need only point out "that there is an absence of evidence to support the nonmoving

5   party's case." *Id.* at 325.

6        A party opposing a properly supported motion for summary judgment "may not rest upon the

7   mere allegations or denials of [that] party's pleading, but . . . must set forth specific facts showing

8   that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Liberty Lobby*, 477 U.S. at 248.

9   When the nonmoving party relies only on its own affidavits to oppose summary judgment, it cannot

10  rely on conclusory allegations unsupported by factual data to create an issue of material fact. *United*

11  *States v. 1 Parcel of Real Property*, 904 F.2d 487, 492 n.3 (9th Cir. 1990) (citing *Marks v. United*

12  *States*, 578 F.2d 261, 263 (9th Cir. 1978). However, the opposing party need not produce evidence

13  in a form that would be admissible at trial in order to avoid a summary judgment. *Celotex*, 477 U.S.

14  at 324. Nor must the opposing party show that the issue will be resolved conclusively in its favor.

15  *Liberty Lobby*, 477 U.S. at 248-49. All that is necessary is sufficient evidence supporting the

16  asserted factual dispute and requiring a jury or judge to resolve the parties' differing versions of the

17  truth at trial. *Id.*

18       The Court's function on a summary judgment motion is not to make credibility

19  determinations or weigh conflicting evidence with respect to a disputed material fact. *T.W. Elec.*

20  *Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Rather, the evidence

21  and inferences to be drawn from the facts must be viewed in the light most favorable to the

22  nonmoving party. *Id.* at 631. However, in determining whether to grant or deny summary

23  judgment, it is not a court's task "to scour the record in search of a genuine issue of triable fact."

24  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1966). Rather, a court is entitled to rely on the

25  nonmoving party to identify with reasonable particularity the evidence that precludes summary

26  judgment. *Id.*

27

28

**United States District Court**
For the Northern District of California

**B.       Application to the Case at Bar**

As Defendant moves for summary judgment on all Plaintiff's causes of action, the Court shall herein address each cause of action: (1) whether Defendant discriminated against Plaintiff based on his color in violation of Title VII and FEHA; (2) whether Defendant violated Plaintiff's civil rights in violation of 42 U.S.C. § 1983; (3) whether Defendant owed a duty to Plaintiff to ensure that he was not discriminated against or left in a hostile environment and whether that duty was breached; (4) whether Defendant is liable for Negligent Infliction of Emotional Distress for breaching the above duty, if owed to the Plaintiff; and (5) whether Defendant's action effected a Breach of Contract and Covenant of Good Faith And Fair Dealing.

1.       <u>Whether Defendant discriminated against Plaintiff based on his color in violation of Title VII and FEHA.</u>

To establish that Defendant unlawfully fired Plaintiff based on his color, Plaintiff must prove a prima facie case of discrimination under both Title VII and FEHA.  See *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  Should the Plaintiff meet his burden, the burden then shifts to the Defendant to show a legitimate and nondiscriminatory reason for its actions.  *Washington v. Garrett*, 10 F.3d 1421, 1433 (9th Cir. 1994).  If the Defendant meets this burden, the Plaintiff must demonstrate that the reasons given by the Defendant were merely a pretext for discrimination.  *Id.*  If Plaintiff's evidence to refute Defendant's legitimate reason for termination is totally lacking, Defendant is entitled to summary judgment.  *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890-91 (9th Cir. 1994).  California courts apply this same analysis in FEHA cases due to the similarity of the California and federal discrimination laws.  *Guz v. Bechtel National Inc.*, 24 Cal. 4th 317, 354.

To make a prima facie showing of discrimination, Plaintiff must prove that: "(1) he was a member of a protected class, (2) he was . . . performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." *Id.* at 355; *see McDonnell*

9

United States District Court
For the Northern District of California

*Douglas Corp.,* 792 U.S. at 802.  Of these elements, Plaintiff has shown conclusively only that he is a member of a protected class, thereby fulfilling the first element.  As to the second element, the Court finds that while at times, Plaintiff may have satisfactorily performed his job duties, Plaintiff failed to perform his position competently, resulting in discipline on multiple occasions and Plaintiff's eventual resignation in lieu of termination.  Even if Plaintiff were able to prove that he had performed his duties competently, he cannot make a prima facie showing of discrimination because he is unable to point to any evidence that suggests a discriminatory motive in any of the disciplinary actions against him.  The facts show that Plaintiff violated County policies concerning willful disobedience, insubordination, discourteous treatment of the public or fellow employees, appropriate email use, and sexual harassment, and was disciplined accordingly.

Plaintiff's own inappropriate conduct is documented, but his allegations concerning the alleged discriminatory treatment directed at him are unsubstantiated by any evidence, other than his own allegations.  There is a lack of evidence suggesting that any of the disciplinary actions taken by Defendant against Plaintiff were implemented because of his skin color.  All of Plaintiff's allegations regarding incident and comments which he perceived were discriminatory occurred in the weeks following September 11, 2001.  When Plaintiff reported these issues to Mr. Hing, a meeting was held to remind staff to be tolerant in light of the recent tragic events.  Mr. Hing advised Plaintiff to provide more detailed information so that his allegations could be thoroughly investigated, and Plaintiff declined to do so, informing Mr. Hing that there were no concerns to address.  Mr. Hing informed Plaintiff that the matter was closed and Plaintiff thanked him.  The undisputed facts indicated that the subsequent disciplinary actions taken by Defendant over the next three years were prompted by Plaintiff's own violations of County policies.  There are no facts that tie the incidents and comments that occurred on and shortly after September 11, 2001 to the disciplinary actions prompted by Plaintiff's misconduct on the job.  There is no evidence suggesting that any of the disciplinary actions taken by Defendant against the Plaintiff had anything to do with the incidents

**United States District Court**
For the Northern District of California

with his coworkers that Plaintiff perceived as discriminatory, and the Court finds that Plaintiff failed to establish a prima facie case of discrimination.

Because he cannot prove a prima facie case of discrimination, Defendant is not required to show legitimate, non-discriminatory reasons for instituting discriminatory actions against Plaintiff, though Defendant has proved that such reasons exist.  Plaintiff has also failed to establish that a genuine issue of material fact exists as to whether Defendant's legitimate, non-discriminatory reasons for disciplinary action against the Plaintiff were a pretext for discrimination based on his color, *see*, *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981); *Guz*, 24 Cal. 4th at 355-56, entitling Defendant to summary judgment.  *Wallis*, 26 F.3d at 890-91.  The undisputed facts demonstrate that the actions taken by Defendant were based on legitimate, non-discriminatory purposes.  There is ample evidence that the County based its disciplinary actions on the information provided to Agency human resources personnel indicating that Plaintiff: made comments his supervisors perceived as racist, categorized co-workers as "My Dear Filipino Americans," sent and received inappropriate emails, allegedly pulled  a coworkers hair and made sexually suggestive comments to her, and allegedly made comments to coworkers about female customers.  Defendant clearly had legitimate reasons for imposing disciplinary actions against Plaintiff and followed civil service rules in affording Plaintiff an opportunity to oppose those actions at three *Skelly* hearings.

Even if Plaintiff believes that his actions were not sufficient to support the discipline imposed, Defendant's reasons may still be considered legitimate and non-discriminatory.  Courts require only that the employer "honestly believed its reason for its actions, even if its reason is foolish or trivial or even baseless," which is far from the case here.  *Villiarmo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1063 (9th Cir. 2002).  The undisputed facts show that Defendant suspended Plaintiff and ultimately terminated his employment because it honestly believed he had violated its policies.  Plaintiff cannot meet his burden of establishing that a discriminatory purpose motivated Defendant's conduct, or that the stated reason for discipline should not be believed.  *See*, *Texas Dept.*

1   *of Community Affairs*, 450 U.S. at 256.  There is no evidence that the County was motivated to take

2   action against the Plaintiff due to the color of his skin.  The Court finds that summary judgment is

3   appropriate with respect to Plaintiff's first cause of action for racial discrimination under Title VII

4   and FEHA.

5

6       2.      Whether Defendant violated Plaintiff's civil rights in violation of 42 U.S.C. § 1983

7

8           Plaintiff alleges that Defendant violated his civil rights.  For the County to be liable for a

9   civil rights violation under this statute, Plaintiff's injury must result from the implementation of "an

10  official government policy or custom."  *Davis v. Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989)

11  (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 694 (1978).  Municipalities

12  may not be held liable under Section 1983 by a respondeat superior theory.  *Monell*, 436 U.S. at

13  691-92.  To prove that a municipality has violated his constitutional rights under Section 1983,

14  Plaintiff must show:  "(1) that he possessed a constitutional right of which he was deprived; (2) that

15  the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's

16  constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'"

17  *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (internal quotations omitted.)  Plaintiff has

18  failed to point to any facts demonstrating that Defendant had a policy which caused a violation of

19  Plaintiff's civil rights.  There is no evidence that any of the disciplinary actions were imposed as a

20  result of a policy of Defendant that was discriminatory and therefore amounted to a constitutional

21  violation.  Because Plaintiff cannot point to a policy which was the moving force behind any

22  constitutional violation, the Court finds that there is insufficient evidence to establish municipal

23  liability under *Monell*.

24          The undisputed facts above support Defendant's contention that the actions taken against

25  Plaintiff were for legitimate, non-discriminatory reasons, and Plaintiff is unable to rebut those

26  reasons or to provide evidence that Defendant acted with an intent to discriminate.  "A plaintiff who

27

28                                                       12

fails to establish intentional discrimination for purposes of Title VII . . . also fails to establish intentional discrimination for purposes of Section 1983." *Sischo-Nownejad v. Merced Community College*, 934 F.2d 1104, 1112 (9th Cir. 1991) (superseded by statute on other grounds as stated in *Dominguez-Curry v. Nevada Transp. Dept.*, 424 F.3d 1027, 1041 (9th Cir. 2005)).  The Court grants summary judgment as to Plaintiff's second cause of action.

3.       Whether Defendant owed a duty to Plaintiff and breached it, causing Defendant to be liable for Negligence and Negligent Infliction of Emotional Distress

This Court has jurisdiction over Plaintiff's related state law claims.  28 U.S.C. § 1367.  The *Erie* doctrine applies when a federal court hears state law claims, so California state law will apply as to the negligence claims.  *Yount v. Acuff Rose-Opryland*, 103 F.3d 830, 835 fn. 6 (9th Cir. 1996).  The California Tort Claims Act has abolished the common-law cause of action of negligence as to governmental entities.  In California, there must be a statute providing that a governmental entity can be held liable for a certain act, otherwise there is no liability "for an injury, whether such injury arises out of an act or omission of the public entity or public employee or any other person."  Cal. Gov't. Code § 815.  "Direct tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care, and not on the general tort provisions of Civil Code section 1714.  Otherwise, the general rule of immunity for public entities would be largely eroded by the routine application of general tort principles."  *Eastburn v. Regional Fire Protection Authority*, 31 Cal. 4th 1174, 1183 (2003).  No statute exists declaring that the County can be held liable on a theory of general negligence, or a theory of negligent infliction of emotional distress.  No statute exists that gives rise to a specific duty of care.  Plaintiff has been unable to point to any statute for precisely these reasons.

Even if a statute did exist for these causes of action, Defendant is immune under two provisions of the California Government Code.  Section 820.2 provides:  "[e]xcept as otherwise

provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."  Cal. Gov't. Code § 820.2.  Section 815.2(b) further provides that "a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability.  Cal. Gov't. Code § 815.2(b).  Defendant and its employees were well within their discretion to institute disciplinary action against Plaintiff and to seek his resignation.  *See*, *Summers v. City of Cathedral Hill*, 225 Cal.App.3d 1047, 1064 (1990). The determination to institute disciplinary proceedings and to seek Plaintiff's resignation were discretionary acts, so Defendant and its employees are immune from liability.

Plaintiff has also failed to present a tort claim to the Alameda County Board of Supervisors, as required by California Gov't. Code § 945.4.  Presentation of a tort claim is a mandatory prerequisite to bringing any tort action against a public entity; the claim must be presented in writing and wholly or partly rejected  before any tort action may be maintained.  *Dilts v. Cantua Elementary School Dist.*, 189 Cal.App.3d 27, 31 (1987).  Plaintiff has therefore failed to exhaust his administrative remedies and his claim would be barred even if he were entitled to bring it in the first place.

Plaintiff has failed to allege any facts that demonstrate any duty of care, breach of that duty, or causation of any damages that give rise to liability for negligence.  Plaintiff has not offered evidence sufficient to show that he has suffered any emotional distress, or that Defendant caused such distress.  The Court finds that Defendant is entitled to summary judgment on Plaintiff's negligence and negligent infliction of emotional distress claims.

4.   Whether Defendant's actions effected a Breach of Contract and Covenant of Good Faith and Fair Dealing

Plaintiff asserts that he has an employment contract with the County of Alameda.  However, a long line of California cases have held that public employment is conferred by statute, not by contract.  *See e.g., Miller v. State of California*, 18 Cal.3d 808, 813-14 (1977); *Shoemaker v. Myers*,

14

52 Cal.3d 1, 23-24 (1990); *Jenkins v. County of Riverside*, 138 Cal.App.4th 593, 604 (2006). "Plaintiff has also attempted to state a cause of action for breach of contract or breach of the implied covenant of good faith and fair dealing.  However, because plaintiff is a civil service employee, he cannot state such a cause of action.  [N]o employee has a vested contractual right to continue in employment beyond the time or contrary to the terms and condition fixed by law."  *Shoemaker*, 52 Cal.3d at 23-24.  The covenant of good faith and fair dealing is an implied term of a contract, so the existence of a contract is necessary to allege a breach of the covenant.  *Smith v. City and County of San Francisco*, 225 Cal.App.3d 38, 49 (1990).  A contractual relationship does not exist in this case. The Court finds that as a matter of law, Plaintiff cannot state a cause of action for breach of contract and the covenant of good faith and fair dealing, and grants summary judgment as to this cause of action.

### IV.  CONCLUSION

For the foregoing reasons, the Court grants summary judgment in favor of the Defendant as to each cause of action alleged in Plaintiff's Complaint.

Plaintiff shall take nothing by way of his complaint.  All motions are hereby terminated.

**IT IS SO ORDERED.**

Dated: December 10, 2008                                           _____

MARIA-ELENA JAMES

United States Magistrate Judge